# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | |
|---|---|
| MYPAQ HOLDINGS LTD., | CIVIL ACTION NO. 6:22-CV-150 |
| Plaintiff, | |
| v. | |
| ANKER INNOVATIONS LTD., | JURY TRIAL DEMANDED |
| Defendant. | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR
## PATENT INFRINGEMENT AND JURY DEMAND

Plaintiff MyPAQ Holdings Ltd. ("MyPAQ") files this Original Complaint for Patent Infringement and Jury Demand against Defendant Anker Innovations Ltd. ("Defendant" or "Anker"). Plaintiff alleges infringement of United States Patent Number 7,675,759 (the "'759 Patent") and United States Patent Number 8,477,514 (the "'514 Patent") (collectively, the "Patents") as follows:

### I. PARTIES

1. MyPAQ is a corporation organized and existing under the laws of the P with a principal place of business at 303 Aarti Chambers, Victoria Mahe, Republic of Seychelles. MyPAQ is the assignee of each of the Patents.

2. Defendant Anker Innovations Ltd. is a corporation organized under the laws of Hong Kong SAR, with a principal place of business at Rooms 1318-19, 13/F, Hollywood Plaza, 610 Nathan Road, Mongkok, Kowloon, Hong Kong SAR.

### II. JURISDICTION

3. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, including 35 U.S.C. §§ 271, 281, 284, and 285. This is a patent infringement lawsuit over which this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

4. This United States District Court for the Western District of Texas has personal jurisdiction over Defendant because Defendant transacts and conducts business in and with residents of this District and the State of Texas.

5. MyPAQ's causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the State of Texas.

6. Defendant, directly or through subsidiaries, intermediaries, and/or agents that it controls, has committed acts that infringe the Patents within this District and the State of Texas by making, using, selling, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas infringing products. Defendant makes, uses, sells, offers for sale, ships, distributes, advertises, promotes, and/or otherwise commercializes such infringing products in this District and the State of Texas. Defendant regularly conducts and solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from goods and services provided to residents of this District and the State of Texas.

### III. VENUE

7. Venue is proper in this District against Defendant because venue in a patent infringement action against a foreign defendant is proper in any judicial district. *Brunette Mach. Works, Ltd. v. Kochum Indus., Inc.*, 406 U.S. 706, 711–14 (1972); *see also TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1520 n.2 (2017) (citing *Brunette Mach. Works*, 406 U.S. at 706); *In re HTC Corp.*, 889 F.3d 1349, 1354 (Fed. Cir. 2018) (citing *Brunette Mach. Works*, 406 U.S. at 714).

8. In addition, Defendant has placed, or contributed to placing, infringing products into the stream of commerce via an established distribution channel knowing or understanding that such products would be sold and used in the United States, including in the Western District of Texas.

9. On information and belief, Defendant has authorized retailers that offer and sell products on its behalf in this District, including products accused of infringement herein. On

information and belief, these include Target, *e.g.*, at 5401 Bosque Boulevard, Waco, Texas 76710; and Best Buy, *e.g.*, at 4627 South Jack Kultgen Expressway, Waco, Texas 76706; among others.

10. On information and belief, Defendant has derived substantial revenue from infringing acts in the Western District of Texas, including from the sale and use of infringing products.

11. Venue is proper under 28 U.S.C. § 1391(b)–(c) and 28 U.S.C. § 1400.

## IV. UNITED STATES PATENT NUMBER 7,675,759

12. United States Patent Number 7,675,759 is titled "Power System with Power Converters Having an Adaptive Controller" and was filed on February 23, 2007. The '759 Patent claims priority to United States Patent Application Number 11/607,325, which was filed on December 1, 2006. A true and correct copy of the '759 Patent is publicly available at https://pdfpiw.uspto.gov/.piw?PageNum=0&docid=7675759.

13. The '759 Patent claims patent-eligible subject matter and is valid and enforceable.

14. Claim 1 of the '759 Patent reads:

> A power converter coupled to a power system controller configured to receive a signal indicating a system operational state of a load coupled thereto, comprising:
>
> > a power switch configured to conduct for a duty cycle to provide a regulated output characteristic at an output thereof; and
> >
> > a controller configured to receive a command from said power system controller to enter a power converter operational state as a function of said signal indicating said system operational state, said controller further configured to provide a signal to control said duty cycle of said power switch as a function of said output characteristic and in accordance with said command, thereby regulating an internal operating characteristic of said power converter to improve an operating efficiency thereof as a function of said system operational state.

15. Claim 2 of the '759 Patent reads:

    The power converter as recited in claim 1 wherein said power converter is configured to enter said power converter operational state within a transition time from another power converter operational state.

16. Claim 6 of the '759 Patent reads:

    A power system coupled to a load, comprising:

    a power system controller configured to receive a signal indicating a system operational state of said load and to select a power converter operational state as a function thereof; and

    a power converter, including:

    a power switch configured to conduct for a duty cycle to provide a regulated output characteristic at an output thereof, and

    a controller configured to receive a command from said power system controller to enter said power converter operational state and to provide a signal to control said duty cycle of said power switch as a function of said output characteristic and in accordance with said command, thereby regulating an internal operating characteristic of said power converter to improve an operating efficiency thereof as a function of said system operational state.

17. Claim 11 of the '759 Patent reads:

    The power system as recited in claim 6 wherein said power converter is configured to enter said power converter operational state within a transition time from another power converter operational state.

18. Claim 16 of the '759 Patent reads:

    A method of operating a power system coupled to a load, comprising:

    receiving a signal indicating a system operational state of said load;

    generating a power converter operational state as a function of said system operational state;

    inducing a power converter to enter said power converter operational state; and

> providing a signal to control a duty cycle of a power switch of said power converter as a function of an output characteristic thereof and in accordance with said power converter operational state, thereby regulating an internal operating characteristic of said power converter to improve an operating efficiency thereof as a function of said system operational state.

19. The '759 Patent's named inventors are Daniel A. Artusi, Ross Fosler, and Allen F. Rozman.

20. MyPAQ owns all rights, title, and interest in and to the invention of the '759 Patent and its underlying patent applications by written assignments recorded in the United States Patent and Trademark Office ("PTO"). On March 8, 2007, as recorded with the PTO on April 18, 2007, Daniel A. Artusi, Ross Fosler, and Allen F. Rozman assigned their interests in the '759 Patent to ColdWatt, Inc. On April 7, 2008, as recorded with the PTO on February 4, 2009, ColdWatt, Inc. merged with CW Merger Company and became a wholly owned subsidiary of Flextronics International USA, Inc. In 2009, Flextronics International USA, Inc. formally approved a Plan of Dissolution for ColdWatt, Inc., and ColdWatt, Inc.'s assets, including the '759 Patent, transferred to Flextronics International USA, Inc. as ColdWatt, Inc.'s sole shareholder. Flextronics International USA, Inc. assigned its interests in the '759 Patent to MyPAQ on March 26, 2021, as recorded with the PTO on April 8, 2021.

21. As a result, MyPAQ is the exclusive owner by assignment of all rights, title, and interests in the '759 Patent, including the right to bring this suit for damages, and including the right to sue and recover all past, present, and future damages for infringement of the '759 Patent.

22. Defendant is not licensed to the '759 Patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '759 Patent whatsoever.

## V. UNITED STATES PATENT NUMBER 8,477,514

23. United States Patent Number 8,477,514 is titled "Power System with Power Converters Having an Adaptive Controller" and was filed on February 22, 2010. The '514 Patent

claims priority to United States Patent Application Number 11/607,325, which was filed on December 1, 2006. A true and correct copy of the '514 Patent is publicly available at https://pdfpiw.uspto.gov/.piw?PageNum=0&docid=8477514.

24. The '514 Patent claims patent-eligible subject matter and is valid and enforceable.

25. Claim 1 of the '514 Patent reads:

> A power converter coupled to a load, comprising:
>
> > a power switch configured to conduct for a duty cycle to provide an output characteristic at an output thereof; and
> >
> > a power converter controller configured to receive a signal from said load indicating a system operational state of said load and control an internal operating characteristic of said power converter as a function of said signal.

26. Claim 2 of the '514 Patent reads:

> The power converter as recited in claim 1 wherein said power converter controller is further configured to provide another signal to control said duty cycle of said power switch as a function of said output characteristic and in accordance with said signal.

27. Claim 3 of the '514 Patent reads:

> The power converter as recited in claim 1 wherein said power converter controller is configured to adjust said internal operating characteristic over a period of time.

28. Claim 5 of the '514 Patent reads:

> The power converter as recited in claim 1 wherein said internal operating characteristic is selected from the group consisting of:
>
> > a gate drive voltage level of said power switch of said power converter,
> >
> > a switching frequency of said power converter, and
> >
> > an internal direct current bus voltage of said power converter.

29. Claim 6 of the '514 Patent reads:

> A power system, comprising:

>  a power system controller configured to provide a signal characterizing a power requirement of a processor system; and
>
>  a power converter coupled to said processor system, comprising:
>
>> a power switch configured to conduct for a duty cycle to provide an output characteristic at an output thereof, and
>>
>> a power converter controller configured to receive a signal from said power system controller to control an internal operating characteristic of said power converter as a function of said signal.

30. Claim 7 of the '514 Patent reads:

> The power system as recited in claim 6 wherein said power converter controller is further configured to provide another signal to control said duty cycle of said power switch as a function of said output characteristic and in accordance with said signal.

31. Claim 8 of the '514 Patent reads:

> The power system as recited in claim 6 wherein said power converter controller is configured to adjust said internal operating characteristic over a period of time.

32. Claim 10 of the '514 Patent reads:

> The power system as recited in claim 6 wherein said internal operating characteristic is selected from the group consisting of:
>
>> a gate drive voltage level of said power switch of said power converter,
>>
>> a switching frequency of said power converter, and
>>
>> an internal direct current bus voltage of said power converter.

33. Claim 11 of the '514 Patent reads:

> A power system, comprising:
>
>> a power system controller configured to enable operation of components of a processor system to establish a state of power drain thereof, said power system controller configured to provide a signal to identify operation of said processor system in said state of power drain; and
>>
>> a power converter, coupled to said processor system, comprising a power converter controller configured to receive said signal from said

        power system controller, to sense a power level of said state of power drain in response to said signal, and to control an internal operating characteristic of said power converter as a function of said power level.

34. Claim 12 of the '514 Patent reads:

The power system as recited in claim 11 wherein said power converter further comprises a power switch configured to conduct for a duty cycle to provide an output characteristic 10 at an output thereof, said power converter controller further configured to control said duty cycle of said power switch dependent on said output characteristic and in accordance with said power level.

35. Claim 14 of the '514 Patent reads:

The power system as recited in claim 11 wherein said power converter controller is configured to adjust said internal operating characteristic over a period of time.

36. Claim 15 of the '514 Patent reads:

The power system as recited in claim 11 wherein said internal operating characteristic is selected from the group consisting of:

        a gate drive voltage level of a power switch of said power converter,

        a switching frequency of said power converter, and

        an internal direct current bus voltage of said power converter.

37. Claim 16 of the '514 Patent reads:

A method of operating a power system, comprising:

        enabling operation of components of a processor system to establish a state of power drain thereof;

        providing a signal to identify operation of said processor system in said state of power drain;

        sensing a power level of said state of power drain in response to said signal; and

        controlling an internal operating characteristic of a power converter as a function of said power level.

38. Claim 17 of the '514 Patent reads:

The method as recited in claim 16, further comprising:

> inducing a power switch of said power converter to conduct for a duty cycle to provide an output characteristic at an output thereof; and
>
> controlling said duty cycle of said power switch dependent on said output characteristic and in accordance with said power level.

39. Claim 19 of the '514 Patent reads:

> The method as recited in claim 16 wherein said controlling said internal operating characteristic comprises occurs over a period of time.

40. Claim 20 of the '514 Patent reads:

> The method as recited in claim 16 wherein said internal operating characteristic is selected from the group consisting of:
>
>> a gate drive voltage level of a power switch of said power converter,
>>
>> a switching frequency of said power converter, and
>>
>> an internal direct current bus voltage of said power converter.

41. The '514 Patent's named inventors are Daniel A. Artusi, Ross Fosler, and Allen F. Rozman.

42. MyPAQ owns all rights, title, and interest in and to the invention of the '514 Patent and its underlying patent applications by written assignments recorded with the PTO. On April 7, 2008, as recorded with the PTO on May 4, 2020, ColdWatt, Inc. merged with CW Merger Company and became a wholly owned subsidiary of Flextronics International USA, Inc. In May and June 2008, as recorded with the PTO on May 4, 2020, Daniel A. Artusi, Ross Fosler, and Allen F. Rozman assigned their interests in the '514 Patent to ColdWatt, Inc., then a wholly owned subsidiary of Flextronics International USA, Inc. In 2009, Flextronics International USA, Inc. formally approved a Plan of Dissolution for ColdWatt, Inc., and ColdWatt, Inc.'s assets, including the '514 Patent, transferred to Flextronics International USA, Inc. as ColdWatt, Inc.'s sole shareholder. Flextronics

International USA, Inc. assigned its interests in the '514 Patent to MyPAQ on March 26, 2021, as recorded with the PTO on April 8, 2021.

43. MyPAQ is the exclusive owner by assignment of all rights, title, and interests in the '514 Patent, including the right to bring this suit for damages, and including the right to sue and recover all past, present, and future damages for infringement of the '514 Patent.

44. Defendant is not licensed to the '514 Patent, either expressly or implicitly, nor does it enjoy or benefit from any rights in or to the '514 Patent whatsoever.

## VI. THE ACCUSED INSTRUMENTALITY

45. Defendant, directly or through subsidiaries, intermediaries, and/or agents that it controls, manufactures, uses, and sells infringing devices and products, including, but not limited to, power adapters and converters compatible with USB Type-C plugs, such as the Anker A2712 PowerPort III 65W Pod (collectively "Accused Instrumentality"), which is pictured below:



## VII. COUNT 1: DIRECT INFRINGEMENT

46. All previous paragraphs are incorporated herein as if fully set forth.

47. Defendant, directly or through subsidiaries, intermediaries, and/or agents that it controls, has directly infringed and continues to directly infringe the Patents under 35 U.S.C. §§ 271(a)

and 271(g) by making, using, selling, offering to sell, and/or importing in or into the United States the Accused Instrumentality that practices the Patents.

48.  As further described in the claim charts attached as <u>Exhibits A–G</u>, the Accused Instrumentality directly infringes each element of at least Claims 1, 2, 6, 11, and 16 of the '759 Patent; and/or Claims 1, 2, 3, 5, 6, 7, 8, 10, 11, 12, 14, 15, 16, 17, 19, and 20 of the '514 Patent.

49.  Upon information and belief, Defendant manufactures the Accused Instrumentality at facilities in the United States, China, Japan, and/or the United Arab Emirates. Defendant, directly or through subsidiaries, intermediaries, and/or agents that it controls, markets, sells, offers to sell, and/or imports the Accused Instrumentality in and into the United States.

50.  Defendant markets and/or offers to sell the Accused Instrumentality, for example, to customers directly through the Amazon website as a third-party seller:



Amazon, https://www.amazon.com/Charger-Anker-PowerPort-MacBook-Galaxy/dp/B086YGHRNP (last visited Feb. 7, 2022).

51. On information and belief, Defendant also markets and/or offers to sell the Accused Instrumentality through authorized retailers, including, but not limited to, Target and Best Buy.

## VIII. COUNT 2: INDIRECT INFRINGEMENT

52. All previous paragraphs are incorporated herein as if fully set forth herein.

53. Defendant, directly or through subsidiaries, intermediaries, and/or agents that it controls, has indirectly infringed and continues to indirectly infringe the Patents under 35 U.S.C. § 271(b) by taking active steps to encourage, facilitate, aid, and/or otherwise cause direct infringement by others, including, but not limited to, the customers of its products.

54. Such active steps include, for example, Defendant's advertising, marketing, offering for sale, and sale of the Accused Instrumentality, including, but not limited to, through the Amazon website as a third-party seller as pictured in paragraph 50.

55. On information and belief, such active steps also include, for example, Defendant's publication of user manuals or guides, which provide Defendant's customers and users with instructions for, among other things, how to use the Accused Instrumentality:



Anker, https://manuals.plus/anker/a2712h11-powerport-iii-65w-pod-manual.pdf (last visited Feb. 7, 2022).

56. On information and belief, Defendant provides a copy of a user manual or guide to its customers with the purchase of the Accused Instrumentality. For example, Defendant's product listing on the Amazon website lists, among other things, a "welcome guide" under "What You Get." *See* Amazon, [https://www.amazon.com/Charger-Anker-PowerPort-MacBook-Galaxy/dp/B086YGHRNP](https://www.amazon.com/Charger-Anker-PowerPort-MacBook-Galaxy/dp/B086YGHRNP) (last visited Feb. 7, 2022).

57. Defendant, directly or through subsidiaries, intermediaries, and/or agents that it controls, undertook and continues to undertake such active efforts for the purpose of inducing, and intending to induce, its customers to use the Accused Instrumentality. Such efforts resulted in, and continue to result in, the Accused Instrumentality being used by Defendant's customers.

58. On information and belief, Defendant's customers used and continue to use the Accused Instrumentality to power a variety of devices, including smartphones, tablets, and laptops, according to inventions claimed by the Patents. On information and belief, Defendant's customers do not manufacture the Accused Instrumentality but instead purchase it from Defendant.

59. As further described in the claim charts attached as Exhibits A–G, the Accused Instrumentality directly infringes each element of at least Claims 1, 2, 6, 11, and 16 of the '759 Patent; and/or Claims 1, 2, 3, 5, 6, 7, 8, 10, 11, 12, 14, 15, 16, 17, 19, and 20 of the '514 Patent. Therefore, Defendant's customers' use of the Accused Instrumentality constitutes direct infringement of the Patents under 35 U.S.C. §§ 271(a) and 271(g). Such use was the result of Defendant's active encouragement and intentional inducement.

60. Defendant has known of the existence of the Patents and that the Accused Instrumentality infringes at least one claim of the Patents since at least Defendant's receipt of this Original Complaint.

61. Defendant has known that its customers' acts, including, but not limited to, its customers' use of the Accused Instrumentality, constituted direct infringement of at least one claim of the Patents since at least Defendant's receipt of this Original Complaint.

62. In addition to the foregoing and/or in the alternative, Defendant is liable as a contributory infringer of the Patents under 35 U.S.C. § 271(c). Defendant has offered to sell and/or sold the Accused Instrumentality within the United States, including, as pictured in paragraph 50, through the Amazon website as a third-party seller.

63. Defendant, directly or through subsidiaries, intermediaries, and/or agents that it controls, contributes to direct infringement by others, including, but not limited to, the customers of its products. On information and belief, the Accused Instrumentality is compatible with USB Type-C plugs and cables manufactured by a variety of entities.

64. On information and belief, Defendant's customers couple a load—such as a smartphone, tablet, or laptop—to the Accused Instrumentality using a USB Type-C plug or cable. When coupled to a smartphone, tablet, laptop, or other load, the Accused Instrumentality can deliver power to that device, according to inventions claimed by the Patents.

65. Each invention claimed by the Patents is a material component of the Accused Instrumentality because the Accused Instrumentality cannot deliver power, according to inventions claimed by the Patents, or otherwise function without such inventions.

66. Because the inventions claimed by the Patents are indispensable components of the Accused Instrumentality, the Accused Instrumentality cannot be used without infringing the Patents. Therefore, any use of the Accused Instrumentality necessarily infringes the Patents.

67. On information and belief, Defendant, directly or through subsidiaries, intermediaries, and/or agents that it controls, has advertised and/or marketed the Accused Instrumentality, including as pictured in paragraph 50, for use only as a power adapter and/or converter compatible with USB

Type-C plugs. On information and belief, Defendant has also published user manuals or guides, including as pictured in paragraph 55, which instruct its customers to use the Accused Instrumentality only as a power adapter and/or converter compatible with USB Type-C plugs.

68. Defendant has acted in such a manner because there is no logical or practical use for the Accused Instrumentality other than its use as a power adapter and/or converter compatible with USB Type-C plugs.

69. On information and belief, Defendant's customers do not use the Accused Instrumentality for any purpose other than as a power adapter and/or converter compatible with USB Type-C plugs. That is so because there is no logical or practical use for the Accused Instrumentality other than its use as a power adapter and/or converter compatible with USB Type-C plugs.

70. As a result, the Accused Instrumentality is not a staple article or a commodity of commerce suitable for any substantial non-infringing use. Thus, Defendant is liable as a contributory infringer.

## IX. JURY DEMAND

71. Plaintiff hereby demands a trial by jury on all issues so triable.

## X.  PRAYER FOR RELIEF

72. Plaintiff requests the following relief:

A. A judgment that Defendant has directly infringed, either literally and/or under the doctrine of equivalents, and continues to directly infringe the Patents;

B. A judgment and order requiring Defendant to pay Plaintiff damages under 35 U.S.C. § 284, and supplemental damages for any continuing post-verdict infringement through entry of the final judgment with an accounting as needed;

C. A judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285 and Plaintiff is therefore entitled to reasonable attorneys' fees;

D. A judgment and order requiring Defendant to pay Plaintiff pre-judgment and post-judgment interest on the damages awarded;

E. A judgment and order awarding a compulsory ongoing royalty;

F. A judgment and order awarding Plaintiff costs associated with this action; and

G. Such other and further relief as the Court deems just and equitable.

Dated: February 10, 2022               Respectfully submitted,

                                                    By:   */s/ Charles Ainsworth*
                          Charles Ainsworth (Texas 00783521)
                          Robert Christopher Bunt (Texas 00787165)
                          PARKER, BUNT & AINSWORTH, P.C.
                          100 E. Ferguson, Suite 418
                          Tyler, Texas 75702
                          Tel: (903) 531-3535
                          charley@pbatyler.com
                          rcbunt@pbatyler.com

                          Alfonso G. Chan (Texas 24012408)
                          Michael W. Shore (Texas 18294915)
                          Halima Shukri Ndai (Texas 24105486)
                          SHORE CHAN LLP
                          901 Main Street, Suite 3300
                          Dallas, Texas 75202
                          Tel: (214) 593-9110
                          Fax: (214) 593-9111
                          achan@shorechan.com
                          mshore@shorechan.com
                          hndai@shorechan.com

                          Brian D. Melton (Texas 24010620)
                          Krisina J. Zuñiga (Texas 24098664)
                          Scott T. Glass (Texas 24121287)
                          SUSMAN GODFREY LLP
                          1000 Louisiana Street, Suite 5100
                          Houston, Texas 77002
                          Tel: (713) 651-9366
                          Fax: (713) 654-6666
                          bmelton@susmangodfrey.com
                          kzuniga@susmangodfrey.com
                          sglass@susmangodfrey.com

                          Steven M. Shepard (New York 5291232)
                          SUSMAN GODFREY LLP
                          1301 Avenue of the Americas, 32nd Floor
                          New York, New York 10019
                          Tel: (212) 336-8330
                          Fax: (212) 336-8340
                          sshepard@susmangodfrey.com

                          **COUNSEL FOR PLAINTIFF**
                          **MYPAQ HOLDINGS LTD.**